**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**


**SHAWN O'HARA; BARBARA DALE WASHER;**
**THOMAS RANDOLPH HUFFMASTER; And**
**KEN WOODFORD**                                                      **PLAINTIFFS**


**VERSUS**                                        **CIVIL ACTION NO.  2:06cv180KS-MTP**


**MISSISSIPPI OFFICE OF SECRETARY**
**OF STATE; And KIM KILLINGWORTH**                            **DEFENDANTS**



**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion to Dismiss **[#5]** filed on behalf of the

defendants.  The court, having reviewed the motion, noting no response from the

plaintiff and having further reviewed the pleadings and exhibits on file and being

otherwise fully advised in the premises finds that the motion is well taken and should be

granted.  The court specifically finds as follows:

This complaint stems from a schism within the Reform Party of Mississippi

("RPM") between Ted Weill and Shawn O'Hara caused by O'Hara's June 2005

attempted *coup d'etat*.  The factions did not resolve their dispute either internally or

through legal action before the March 2006 qualifying deadline for November's general

election.  As a result, the State Board of Election Commissioners was confronted with

contradictory claims regarding whether the O'Hara slate of candidates were the proper

RPM nominees for the upcoming congressional elections.  The O'Hara candidates, who are the plaintiffs in this matter, are Shawn O'Hara, Barbara Dale Washer, Thomas Huffmaster, and Ken Woodford.

Prior to June 2005, Ted Weill was the undisputed chairman of the RPM.  On June 27, 2005, the O'Hara faction held a "state convention" at the Hong Kong Buffet in Hattiesburg,Mississippi, at which time Barbara Dale Washer, Shawn O'Hara, Lee Dilworth, and Kerry Hunt were elected as officers.  Weill contends that the June 2005 convention was an "illegal" act not authorized or sanctioned by the RPM.  On June 28, 2005, the National Reform Party informed the Secretary of State's Office that Ted Weill continued to be "recognized by The Reform Party of the United States of America as the properly elected and presently continuing Chairman of the Reform Party of Mississippi.

On December 17, 2005, Ted Weill convened RPM's state convention at the Hilton Hotel in Jackson, Mississippi.  In January 2006, Weill informed the Secretary of State's Office that O'Hara and Washer had been removed from the RPM.  On March 10, 2006, Weill further informed the Secretary of State's Office that O'Hara and Washer should not be placed on the November 2006 election ballot under the RPM label.  Thus, by the March qualifying deadline for the November 2006 general election, the O'Hara candidates had submitted qualifying documents for various congressional elections under the RPM label.   In opposition, Chairman Ted Weill had informed the Secretary of State's Office that the O'Hara candidates had been nominated at an "illegal convention" and were not to be affiliated with the RPM on the November ballot.

**Statutory Role of the State Board of Election Commissioners**

The State Board of Election Commissioners has the quasi-judicial duty as an administrative agency of the State of Mississippi to determine the qualifications of candidates for office and to determine whether or not such candidates' names should be placed on the official sample ballot.  *See* Miss. Code Ann. §§ 23-15-299(7); 23-15-359(8); *Powe v. Forrest County Election Comm'n*, 163 So.2d 656 (Miss. 1964). The State Board is comprised of the Governor, the Secretary of State, and the Attorney General.  *See* Miss. Code Ann. § 23-15-211(1).

Political parties are required to notify the Secretary of State's Office of their party's nominees so that the nominees may be referred to the State Board of Election Commissioners to be placed on the ballot.  *See* Miss. Code Ann. § 23-15-296.  Only those persons properly and duly nominated by a party (or otherwise qualified as an independent or nonpartisan candidate) may be placed on the ballot.  *See* Miss. Code Ann. § 23-15-1065.

A candidate or other person aggrieved by a decision of the State Board regarding candidate qualifications must appeal to the circuit court within fifteen (15) days of the decision.  *See* Miss. Code Ann. § 23-15-963(4).  Once the candidates are approved by the State Board, an official sample ballot is distributed to each county and the counties are then required to have ballots printed and available for absentee voting forty-five (45) days prior to the election.  *See* Miss. Code Ann. §§ 23-15-367(3); 23-15-649.  Counties pay for ballots to be printed.  *See* Miss. Code Ann. § 23-15-355.  With respect to the general election scheduled for November 7, 2006, counties had to have

ballots printed and available for absentee voting by September 25, 2006.

### State Board of Election Commissioners' Proceedings
### Regarding the Reform Party of Mississippi and the O'Hara Candidates

The State Board reviewed the qualifications of the O'Hara candidates at its August 15, 2006, meeting.  The O'Hara candidates were given the opportunity to submit briefs and to be heard at the hearing.  The O'Hara candidates contended at the hearing that they were the true RPM candidates and did not submit any petitions or other documents to qualify as independent candidates.  The State Board considered the RPM official documents and correspondence from the Chairman of the Reform Party of the United States, all of which indicated that Ted Weill is the duly authorized and serving Chairman of RPM.  The State Board further considered that Weill had determined that the O'Hara candidates were not RPM's nominees.  Relying on the above, the State Board determined that candidates O'Hara, Washer, Huffmaster, and Woodford were not properly the nominees of the RPM.

Although a statutory provision for appeal to state court exists, the O'Hara candidates instead filed this suit.  The complaint filed under Section 1983 asserts violations of the First, Fifth, Ninth, Tenth, Fourteenth, Fifteenth, and Seventeenth Amendments, as well as unspecified violations of the Voting Rights Act and the federal wire fraud statutes.  In relief, plaintiffs seek an order placing them on the November 2006 ballot and punitive damages in the amount of $12 million "or whatever the maximum amount of money [sic] the court is authorized to award."  Plaintiffs also seek an order from this court terminating Kim Killingworth's employment with the Secretary of State's Office.

4

## Allegations regarding Kim Killingworth.

The complaint contains very few allegations regarding Secretary of State employee Kim Killingworth.  Ms. Killingworth is alleged to have received certain qualifying papers filed by the O'Hara candidates.  The Complaint then alleges that Killingworth "failed to place the names of those candidates on the ballot."  The complaint does not, and defendants' assert, cannot, allege that Killingworth had the statutory authority to place a candidate's name on the ballot.  The authority to place a candidate on the ballot lies exclusively with the State Board of Election Commissioners, of which Killingworth is not a member. *See* Miss. Code Ann. §§ 23-15-211(1); 23-15-299(7); 23-15-359(8).


## STANDARD OF REVIEW

A Rules 12(b)(1) motion attacks the court's jurisdiction to hear and to decide any issues in the case and therefore the court must address that at any time during the pendency of the litigation that is asserted or even indeed upon its own motion.  *See Williamson v. Tucker*, 645 F. 2d 404 (5th Cir. 1981).  It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts.  If, however, the court limits its review to the face of the pleadings, the safeguards under Rule 12(b)(6) apply.

Dismissal pursuant to Rule 12(b)(6) is appropriate if a party fails to state a claim under which relief can be granted.  The allegation that the complaint must be accepted is true when the court considers whether the plaintiff has stated a cause of action.  *See*

*Cramer v. Skinner*, 931 F. 2d 1020 (5th Cir. 1991)(*cert. denied*, 60 U.S.L.W. 3057, 112 S. Ct. 298, 116 L. Ed. 2d 242 (1991)).  Only the complaint and allegations contained therein are to be considered in reaching a decision on a defendant's Rule 12(b)(6) motion to dismiss.  The complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of his or her claims which would entitle him or her to relief.

　　　If the court considers external matters to the pleadings in deciding a 12(b)(1) motion, the allegations of the complaint need not be taken as true.  If the factual matters considered outside the pleadings are undisputed, the court need not make specific factual findings for the record.  Conversely, if the court is called upon to make factual determinations to support its order, they should be stated specifically.  *See, Williamson v. Tucker, supra*.

### ELEVENTH AMENDMENT IMMUNITY

　　　The defendants first assert that the constitutional claims against the Secretary of State's Office are barred by the Eleventh Amendment.  "The Eleventh Amendment prohibits the citizens from bringing suit against the state unless the state waives its immunity."  *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996)(*quoting Ex Parte Young*, 209 U.S. 123, 149, 28 S. Ct. 441, 449-50, 52 L. Ed. 714, 725 (1908)).  The Eleventh Amendment to the United States Constitution provides;

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

6

While the language of the Amendment does not specifically address suits against the State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Further,  "[i]t is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Id.* "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663.  Additionally, the "jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

 "The Eleventh Amendment bars a suit against state officials when the 'state is the real, substantial party in interest.'" *Pennhurst*, 465 U.S. at 101 (other citations omitted).  "Federal claims against state employees in their official capacities are the equivalent of suits against the state." *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996)*(quoting Monell v. New York City Department of Social Services*, 436 U.S. 658, 690, note 55, 98 S. Ct. 2018, (1978)).  As the Supreme Court pointed out in *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945);

> [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

323 U.S. at 464.

"Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" *Pennhurst,* 465 U.S. at 101 (*citing, Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963)(*per curiam*)).  "And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101-102, (*citing, Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)).

"[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121.  "It may be that applying the Eleventh Amendment to pendent claims results in federal claims being brought in state court, or in bifurcation of claims.  That is not uncommon in this area.  Under *Edelman v. Jordan, supra*, a suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." *Pennhurst,* 465 at 122.

The Fifth Circuit has held that whether an agency can be determined to be an appropriate entity which may take advantage of the grant of immunity set forth in the Eleventh Amendment "turns on the entity's (1) status under state statutes and case law, (2) funding, (3) local autonomy, (4) concern with local or state wide problems, (5) ability to sue in its own name, and (6) right to hold and use property." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999).  Further, "the most significant factor in assessing an entity's status is whether a judgment against it will be

paid with state funds." *Id.* at 314, (*quoting McDonald v. Board of Mississippi Levy Commissioners*, 832 F.2d 901, 907 (5th Cir. 1987)).

The Office of the Secretary of State is a constitutionally created office within the executive branch of the State of Mississippi. *See* Miss. Const. Art. 5 § 133.  Thus, the Office of the Secretary of State is immune from suit in the same absolute manner as the State of Mississippi or an agency of the State.  *See Kinnison v. Mississippi Dep't of Wildlife, Fisheries and Parks*, 990 F.Supp. 481, 484 (S.D.Miss. 1998).  There is neither a waiver by the State nor a valid congressional override which authorizes the Section 1983 claims set forth in the complaint to be brought against the Office of the Secretary of State in federal court.

Further, dismissal of the Section 1983 claims against the Secretary of State's Office under Fed. R. Civ. P. 12(b)(6) is required because the plaintiffs would not be entitled to relief under any set of provable facts consistent with the allegations in the complaint.  *See, e.g., Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).  The complaint fails to state a claim under Section 1983 because the Secretary of State's Office is not a "person" within the meaning of that statute. Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  In order to maintain an action pursuant to Section 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of

9

a right secured by the Constitution or other law of the United States.  The United States Supreme Court has ruled that a state is not a "person" within the meaning of section 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).  Thus, the plaintiffs' Section 1983 claims fail for this additional reason.

## QUALIFIED IMMUNITY

The defendants next contend that the monetary claims asserted against Secretary of State employee Kim Killingworth should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) in light of her qualified immunity. The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects the official from both personal liability and the expense of trial and discovery.  *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005).

Under the familiar two-step analysis the court must determine whether the plaintiffs' allegations, if true, establish a violation of a clearly established right.  *Hare v. City of Cornith*, 135 F.3d 320, 325 (5th Cir. 1998).  If such a violation is alleged, the court must decide whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident.  *Id*.  Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if her conduct was objectively reasonable.  *Id*.

To survive a motion to dismiss asserting qualified immunity the plaintiffs must plead more than conclusory allegations and are required to allege specific conduct and actions giving rise to a constitutional violation.  *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).  In light of the well recognized schism between Shawn O'Hara and Ted Weill, in addition to the correspondence from the National Reform Party stating that Weill remained the chairman of the RPM, it was not objectively unreasonable to determine that the O'Hara candidates were not the proper RPM nominees.

However, even that analysis is unnecessary with respect to Secretary of State employee Killingworth.  According to the complaint, Killingworth accepted the O'Hara candidates' qualifying paperwork as an employee of the Secretary of State's Office. Killingworth has no statutory authority to place or remove any candidate's name from the ballot.  The authority to place a candidate on the ballot lies exclusively with the State Board of Election Commissioners, of which Killingworth is not a member.  *See* Miss. Code Ann. §§ 23-15-211(1); 23-15-299(7); 23-15-359(8).

Killingworth's actions – receiving candidate paperwork – were neither objectively unreasonable nor did her actions cause the O'Hara candidates to be withheld from the ballot.  Even if Killingworth had agreed that the O'Hara candidates should be placed on the ballot, she had no authority to remedy the alleged wrong.  Because Killingworth took no action with respect to the O'Hara candidates, nor could she have taken action, the complaint fails to allege an objectively unreasonable act on her part.  *See Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312, 314 (5th Cir. 1999) (affirming 12(b)(6) dismissal when complaint fails to allege personal involvement in the alleged wrongdoing).  Failing to plead facts sufficient to overcome qualified immunity, the

11

complaint should be dismissed.

## FAILURE TO STATE A CLAIM FOR DECLARATORY OR INJUNCTIVE RELIEF

The defendants finally assert that the Complaint fails to state a claim for declaratory or injunctive relief against the Secretary of State's Office or Kim Killingworth.  Following the analysis set forth above and regardless of the immunity issues, the complaint fails to state a claim for even declaratory or injunctive relief against either the Mississippi Secretary of State's Office or Kim Killingworth.  Neither the Secretary of State's Office nor Killingworth rendered the decision to withhold the O'Hara candidates from the ballot.  That decision was made by the State Board of Election Commissioners, of which Killingworth is not a member.  *See* Miss. Code Ann. §§ 23-15-211(1); 23-15-299(7); 23-15-359(8).  Similarly, neither the Secretary of State's Office nor Killingworth have the legal authority to place the O'Hara candidates on the ballot even assuming this court were to order such relief.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendants' Motion to Dismiss **[#5]** is Granted and the plaintiffs' complaint is dismissed with prejudice and that all other pending motions are dismissed as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 17th day of July, 2007.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE